IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SOUTHWESTERN PHYSICAL THERAPY
AND REHABILITATION, INC.,

        Plaintiff,

vs.                                                              CIV NO. 01-0260 MV/LCS

ERIC ARMSTRONG,

        Defendant.

## MEMORANDUM, OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff's Application for a Temporary Restraining Order, filed March 6, 2001 **[Doc. No. 2]**, and Plaintiff's Motion for a Preliminary Injunction, filed March 6, 2001 **[Doc. No. 3]**.  Defendant has received actual notice of both motions and has filed a response to both motions. The Court, having reviewed the moving papers, finds that a hearing is not necessary on these motions. Further, having considered the motions, responses, relevant law, and being otherwise fully informed, the Court finds that the motions are not well-taken and will be **DENIED**, as explained below.

## BACKGROUND

The Defendant, Eric Armstrong, was a physical therapist with the plaintiff, Southwestern Physical Therapy and Rehabilitation ("SWPT").  Armstrong was the physical therapist in charge of SWPT's contract with Miners Colfax Medical Center in Raton, New Mexico ("Miners"). Armstrong signed a covenant not to compete agreement with SWPT, in which he agreed that he would not seek employment or independently contract with any Hospitals, Nursing Homes, Home

Health Agencies or other groups that SWPT currently contracts with, for a period of 12 months following the termination of this contract, or unless agreed upon by both parties.  Armstrong also signed another agreement on November 1, 1997 that specifically related to Miners Colfax Medical Center, whereby he agreed to refrain from seeking employment or independently contracting in any manner with Miners for a period of 12 months following the termination of this contract or unless agreed upon by both parties.

     SWPT had a contract with Miners to provide physical therapy services until July 31, 2001.  SWPT alleges that Armstrong made derogatory statements to Miners about SWPT, that while he was on vacation, deliberately neglected to find a substitute physical therapist, thereby sullying SWPT's reputation with Miners, falsely claimed to Miners that SWPT was breaching its agreement with him by not providing benefits to which he was entitled (health insurance, life insurance and a 401-k plan), and falsely told Miners that SWPT's professional liability insurance had lapsed in July 2000.  SWPT believes that as a result of this last allegation, SWPT's hospital privileges were temporarily suspended until it was determined that there had been no lapse in coverage.  On February 7, 2001, Miners terminated its contract with SWPT, effective April 8, 2001.  SWPT believes that Miners terminated its contract with SWPT based upon Armstrong's alleged comments to Miners about SWPT.  As stated above, the term of the contract was until July 31, 2001, and SWPT states that its contract with Miners provides about $30,000 a month in revenue.

     On January 18, 2001, Armstrong notified SWPT that he was terminating his employment, effective January 24, 2001.  He claimed that the company breached its November 1997 Agreement by failing to provide benefits as promised.  He also claimed that he was not bound by the noncompete agreement.

On January 29, 2001, Armstrong incorporated Rocky Mountain Physical Therapy ("Rocky Mountain"). On February 13, 2001, Miners published a request for proposals ("RFP") to provide physical therapy and rehabilitation services. The deadline for the filing proposals was February 26, 2001. SWPT submitted a proposal, and believes that Rocky Mountain did also.

Plaintiff brings suit for Breach of Non-Compete Covenant and requests Injunctive Relief and Damages; Breach of Contract and requests damages; Breach of Implied Duty of Good Faith and Fair Dealing and requests damages; Tortious Interference with Contract and requests damages; Breach of Fiduciary Duty; Imposition of a Constructive Trust for Armstrong's profits from the Hospital contract if he is awarded the contract; Unfair Practices; Commercial Disparagement and Injurious Falsehood; and Restitution.

Plaintiff seeks a Temporary Restraining Order and a Preliminary Injunction under the first count - to enforce the covenant not to compete agreement. This would prevent Armstrong from submitting a proposal to Miners, and would enjoin him from providing or attempting to provide, directly or indirectly, physical therapy and rehabilitation services to Miners as either an employee or independent contractor.

## **STANDARD**

The district court may grant a temporary restraining order or a preliminary injunction if the moving party shows: "(1) a substantial likelihood of prevailing on the merits; (2) irreparable harm in the absence of the injunction; (3) proof that the threatened harm outweighs any damage the injunction may cause to the party opposing it; and (4) that the injunction, if issued, will not be adverse to the public interest." *Kansas Health Care Ass'n, Inc. v. Kansas Dep't of Social & Rehabilitation Servs.*, 31 F.3d 1536, 1542-43 (10th Cir. 1994) (*citing Autoskill Inc. v. Nat'l*

*Educ. Support Sys., Inc.*, 994 F.2d 1476, 1487 (10th Cir.), cert. denied, 510 U.S. 916, 114, 1543 S.Ct. 307, 126 L.Ed.2d 254 (1993); *Resolution Trust Corp. v. Cruce*, 972 F.2d 1195, 1198 (10th Cir.1992)).  A Temporary Restraining Order ("TRO") may be granted only if (1) it clearly appears from the specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required.  Fed. R. Civ. P. 65(b).  "Because a [TRO or] preliminary injunction is an 'extraordinary remedy . . . the right to relief must be clear and unequivocal."  *Kansas Health Care*, 31 F.3d at 1543 (citing *SCFC ILC, Inc.v. Visa USA, Inc.*, 936 F.2d 1096, 1098 (10th Cir. 1991)).

## ANALYSIS

The Court finds that the issuance of either a temporary restraining order or a preliminary injunction is not warranted in this case because Plaintiff has failed to establish irreparable injury. *Holly Sugar Corp. v. Goshen County Coop. Beet Growers Ass'n*, 725 F.2d 564, 570 (10th Cir.1984).  SWPT is incorrect that it need not prove "irreparable harm" for the Court to grant the TRO.  The plain language of Rule 65 states that a party seeking a TRO must prove irreparable harm.  Plaintiff cites *Cafeteria Operators, L.P. v. Coronado-Santa Fe Associates, L.P.*, 952 P.2d 435 (N.M. 1990) and *Wilcox v. Timberon Protective Ass'n*, 806 P.2d 1068 (N.M. Ct. App. 1990) in support of this bold contention.  Neither *Cafeteria* nor *Wilcox* stand for the proposition that a plaintiff need not prove irreparable injury.  The courts merely concluded that under the facts before them, the injury was irreparable.  *Cafeteria* and *Wilcox* were both cases involving

restrictive covenants on property. The reason that the courts found that a person seeking to enforce a restrictive covenant need not prove damages is because "where the character of the property is intact, legal remedies are inadequate, since damages due to loss of quiet enjoyment are incalculable." *Wilcox*, 806 P.2d at 1076 (citing 3A C.J.S. Injunctions § 100 (1978)). This is not the case here. As explained below, legal remedies are adequate and damages are calculable.

In order to prove irreparable injury, SWPT has to prove that they would suffer more than just economic loss. Courts have consistently held that economic losses do not constitute "irreparable harm" for injunctive relief because such losses can be compensated through monetary damages, i.e. there is an adequate remedy at law. *See Sampson v. Murray*, 415 U.S. 61, 90 (1974). "Under normal circumstances, monetary loss may be remedied by an award of compensatory damages, and the risk of such loss is therefore not considered irreparable." *Kansas Hospital Assoc. v. Whiteman*, 835 F. Supp. 1548, 1552 (D. Kan. 1993); *Holly Sugar Corp.*, 725 F.2d at 570. SWPT states that because the damages are difficult to calculate, the injury is not likely to be calculable. However, SWPT calculates its damages at $30,000 a month in lost revenue from its contract with Miners. Further, SWPT requests a constructive trust on the profits that Mr. Armstrong will receive from SWPT if he is awarded the contract. This is an adequate remedy at law; therefore, an injunction is not warranted.

The additional harm alleged by SWPT is the "loss of customer goodwill" and "loss of fair competition" as a result of Armstrong's alleged actions. With respect to the first harm alleged, "loss of goodwill," this harm resulted from Armstrong's alleged negative comments to Miners about SWPT. The issue before the court is whether Armstrong's alleged breach of the noncompete clause, and his resulting application to Miners for the now-open contract, will cause irreparable injury to SWPT, not whether Armstrong's negative and allegedly misleading

comments to Miners about SWPT led Miners to extinguish its contract with SWPT.  SWPT does not request an injunction, nor is there authority for it to do so, based upon Armstrong's alleged inducement of Miners to breach its contract with SWPT.  Therefore, there is no causal link between the "loss of goodwill" alleged by SWPT and Armstrong's alleged breach of the covenant not to compete.

As to the "loss of fair competition" alleged by SWPT, SWPT does not adequately define what it means by this.  One meaning of "loss of fair competition" is that SWPT is no longer able to "fairly" compete for the Miners contract because of Armstrong's alleged negative comments about SWPT.  However, as noted above, Armstrong's alleged negative comments cannot be the basis for granting a TRO or preliminary injunction.  Another meaning of "loss of fair competition" is that SWPT will have to compete with Armstrong for the Miners' contract, whereas if the covenant were enforced, SWPT would not have to compete with Miners.  SWPT cites *Overholt Crop Ins. Serv. Co. v. Travis*, 941 F.2d 1361 (8th Cir. 1991) for the proposition that "loss of fair competition" is irreparable harm.  However, the court did not state such a proposition.  The court found irreparable harm in that case because there were future losses that could not be ascertained or calculated.  The court found that a permanent injunction was warranted because the plaintiff company, Overholt, could not be protected by legal remedies alone.  *Id.* at 1371.  As stated above, the damages in this case are determinable; therefore, there is no irreparable harm.

Finally, there is no irreparable harm because the harm cited by SWPT is too speculative.  There is no guarantee that SWPT would receive the contract if Armstrong were not allowed to bid.  SWPT has not made a sufficient showing that they would be harmed simply by having Mr. Armstrong be considered by Miners for the contract.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction [**Docs. 2 and 3**] are hereby **DENIED**.

_____
MARTHA VAZQUEZ
UNITED STATES DISTRICT JUDGE

Plaintiff's Attorney
    Henry Bohnhoff

Defendant's Attorney
    Angelo Artuso